Matthias, J.
Counsel for relator have heretofore contended and now urge that the provisions of the building code of the city of Cleveland authorize the alteration in the manner contemplated of the fifth story of relator’s building, and also the use of that portion of said building for tenement purposes, without procuring a permit from the building commissioner so to do; but because of the attitude maintained and the adverse action taken by the building commissioner with reference thereto an application for a building permit was filed, issuance of which is now sought to be enforced by mandamus, it being contended that if under the provisions of the city ordinances the proposed remodeling of the interior of said building required a permit it was the duty of defendant to issue the same.
Relator thus seeks to have determined in this proceeding the question whether such permit is required before it can proceed with the work *133 contemplated, and, if that question be answered in the affirmative, then that the writ of mandamus prayed for shall issue. The building commissioner refused to grant the permit applied for, upon the ground that the provisions of the ordinances of the city comprising its building code prohibit the conversion of the fifth story of relator’s building into residence apartments and forbid the use of that portion of the building for tenement purposes.
The following sections of the building code, together with others, are relied upon and cited:
Article II, Section 46. “No tenement house shall hereafter be increased in height except in compliance with the provisions of. this ordinance regulating the heights of tenement houses hereafter erected.”
Article II, Section 47. “All additional rooms, halls, stairways and passageways hereafter constructed in tenement houses shall comply with all of the provisions of this ordinance relating thereto in the case of tenement houses hereafter erected.”'
Article I, Section 17. (In part.) “Every tenement house hereafter erected more than three (3) stories or forty-five (45) feet in height shall be of I, II, or III class construction as established by ordinance.”
It is conceded that each of the classes of construction referred to as I, II and III is fireproof construction.
The provisions of the last section cited are clear and explicit. The erection of a non-fireproof tenement house more than three stories or forty-five feet in height is thereby absolutely prohibited.
*134 The authority of a-municipality in the exercise of its police power to enact and enforce ordinances of this nature, which provide for and secure the safety and welfare of the people, is no longer open to question. Such regulations are in no wise an invasion of property rights, for no one has a right to use his property in a manner that unreasonably and unnecessarily endangers the lives of others; hence in the interest of the public welfare a property owner must submit to a reasonable regulation and limitation of the use of his property, and, in matters of such character, when private interests and public welfare conflict, the former must give way to the latter.
The building of the relator in question here is not of fireproof construction, nor is it proposed by the changes and alterations to be made to place such building or any part thereof within the class denominated “fireproof construction.”
This building, which is known as the EuclidDoan, is five stories in height. The first floor is used for business purposes, and the second, third and fourth for residence or tenement purposes, and it has thus been used and occupied ever since its erection. The fifth floor has never been used except for storage purposes. The building, therefore, as actually used and occupied, either for business or tenement purposes, consists of but four floors. It is now proposed to make therein tenement apartments for eleven families, which shall be more than three stories, in fact more than four stories and more than forty-five feet, above the curb. The erection of a non-fireproof building of *135 such height containing apartments for “three or more families living independently of each other” is now prohibited.
The ordinance containing the provisions above cited was enacted in 1915. Relator’s building was erected prior thereto. Do the restrictions and limitations of that ordinance have any application to this building? Relator contends they do not, for the reason that by its terms Section 17 of Article I, above quoted, applies only to tenement houses erected after the enactment of the ordinance. Relator further contends that Section 46 of Article II, above quoted, has no application, for the reason that it is not proposed to increase the height of a “tenement house,” as the term “tenement house” means building and the building is not to be increased in height. As supporting that contention counsel cite several sections of the building code, including Section 9 of Article I, a part of which is as follows:
“A tenement house is any house or building or portion thereof which is occupied in whole or in part as the home or residence of three or more families living independently of each other, and doing their cooking upon the premises, and includes apartment houses, flat houses, flats and all other houses so occupied.” .
It is to be observed that this definition of a tenement house is very broad and comprehensive, undoubtedly ma.de so in order that restrictions and limitations upon the construction, care and maintenance of tenement structures occupied as “the residence of three or more families liying inde *136 pendently of each other, and doing their cooking upon the premises,” which restrictions and limitations are more strict and exacting than those applying to buildings to be used for other purposes, shall apply and be enforced not only as to the portion of the structure so used but also to the entire building in which such apartments are located. However we are not now concerned with the construction and application of this building code generally. We are dealing only with the question as to its application to the Euclid-Doan building.
The record discloses that when this building was erected it was completed for the uses and purposes, and only for the uses and purposes, to which it has since been devoted, as heretofore stated. It was completed as a tenement house but four stories in height. The record discloses that when the building was erected the limitation of its use as a tenement house to four stories in height was in accordance with the requirements of the then building commissioner of the city of Cleveland; that notwithstanding a permit had then been issued for a four-story building an attempt was made to extend the walls to five stories. A revocation of the building permit resulted, but later a modification was made whereby the outer wall was permitted to be completed upon the condition that the fifth story should be used and occupied only as an attic for storage purposes. An affidavit exécuted by the then owner of the building, which evidences an agreement as to such limitation upon the use and occupation of the building, was at that time placed on file with the building commissioner. It is urged *137 that the present owner is in no wise bound by such agreement between the building commissioner and the former owner of the building. That evidence is competent, however, as tending to show that the fifth story was not erected for tenement use and that the building was erected as a tenement house only to the height of four stories. The class and character of the building was then fixed as a tenement house four stories high. Now it is proposed to increase its height and to place tenement apartments at a height clearly prohibited by the ordinance of the city now in force; and it is claimed that such action is valid and that a permit must be granted therefor upon the theory that “tenement house” means building occupied as the residence of three or more families, etc., and that no attempt is being made to increase the height of the building.
Upon that theory, if in this large building there were only three families “living independently of each other and doing their cooking upon the premises,” the grade of the building being thereby fixed, all of this large building could be converted into residence apartments regardless of the very clear and evident purpose upon the part of the legislative body of the municipality to preclude the placing of such tenement apartments more than three stories or forty-five feet in height in a building of non-fireproof construction. It is not to be presumed that the legislative body intended to prohibit such erection of future buildings and at the same time permit the subsequent construction of living apartments in non-fireproof structures theretofore erected, at any height desired by the owner *138 thereof, particularly where, as here, the building when erected was limited as a tenement house to four stories. It is clear that what is now proposed to be done is to increase the height of this tenement house by adding a story of residence apartments thereto, and it seems perfectly obvious that the making of the alterations and changes contemplated amounts to a construction of tenements at such héight as to clearly violate the provisions of the building code which prohibit not only the erection of tenement houses higher than forty-five feet, unless the same are fireproof, but also the increase in height of tenement houses previously erected without compliance with the restrictive provisions of the ordinances in force at the time the extension is proposed to be made. Such ordinances are properly enacted for the preservation and promotion of the safety, health and welfare of the community. A construction thereof should not be adopted which is supertechnical and results in defeating instead of effectuating the obvious purpose of their enactment.
It is urged that this is a matter of very serious pecuniary moment to the relator, and that the restrictions imposed deprive it of a large amount of rentals which would otherwise accrue from the use of its property as desired. Nothing seems to be more firmly established than that whatever measures are reasonably necessary to secure and maintain the peace, safety, morals and best interests of the public may be adopted and enforced under the police power, and that private property is at all times “subservient to the public welfare.”
*139 The provisions of Section 173-37 of Ordinance Number 28151-A render unnecessary a permit for a mere partition of buildings, but can have no application where the changes to be made would result in a direct violation of other clear and explicit provisions of the building code.
In our opinion the building commissioner was fully warranted in refusing the permit applied for. The refusal was justified upon the ground that the changes and alterations proposed to be made are prohibited by the ordinances of the municipality. There was no error in the proceedings in the court of appeals prejudicial to the rights of the plaintiff in error. We aré in entire accord with the finding and judgment of that court. Its judgment is therefore affirmed.

Judgment affirmed.

Nichols, C. J., Wanamaker, Newman, Jones, Johnson and Donahue, JJ., concur.